UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT SEDORE,

                Plaintiff,

v.

SHERRY BURT, *et al.*,

                Defendants.

_____/

Case No. 1:16-cv-903

Hon. Paul L. Maloney

### REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983.  This matter is now before the Court on a motion to dismiss filed by defendants Corizon, Inc., Barbara Bien, P.A., Suzanne Howard, M.D., Jon Decker, M.D., and Richard Worel, M.D. (collectively referred to as the "Corizon defendants") (ECF No. 39), and a motion for summary judgment filed by defendants Burt, Wilkinson, and Hamilton (collectively referred to as the "MDOC defendants") (ECF No. 46).

### I.      Background

### A.      Summary of complaint

Plaintiff filed a 27-page complaint which named the following defendants at the Muskegon Correctional Facility ("MCF"): Warden Sherry Burt; Health Unit Manager ("HUM") Michael Wilkinson; Nursing Supervisor ("NS" )Tamerla Hamilton; PA Barbara Bien; Dr. Jon W. Decker; Dr. Richard Worel; Dr. Suzanne Howard; and Corizon, Inc ("Corizon").  Compl. (ECF No. 1, PageID.2-3).

1

On October 9, 2009, while driving intoxicated, plaintiff caused a motor vehicle accident which killed one person, injured another, and caused himself serious injuries.  Compl. at PageID.7.   Plaintiff was convicted and sentenced as an habitual offender and began serving his sentence at the MDOC on May 19, 2011.  *Id*. at PageID.11).  According to plaintiff, since his incarceration at the MODC, he has "slid dramatically backwards in physical health," has "pursued and fought for adequate medical care," and has been transferred six times.  *Id*. at PageID.11-12. Plaintiff stated that he needs medical care related to the following: cardiology exam; swollen lymph nodes in the right side of his chest; ongoing physical therapy; ongoing orthotics and treatment; respiratory/lung specialist assessment; urologist referral; orthopedic surgeon referral (related to his November 2013 hip replacement); left knee problem; right knee problem; comprehensive program for pain management; remove rod in left femur; neuro-psychology treatment; posttraumatic stress disorder; medical devices related to his disabilities (air mattress, orthopedic shoes, a walker, ice for his left foot, hot water bottle for chronic back pain, ace bandages, urinal bottle, medical detail for unlimited bathroom access due to urinary problems, padded cane handle, basin tub to soak feet, heavy duty diaper/incontinence undergarment; and, to purchase a wheelchair, shower chair, and necessary appliances and supplies at his own expense. *Id*. at PageID.12-15.

Plaintiff's claims against defendants occurred since his transfer to MCF on June 4, 2015, at which time plaintiff alleged that has received "barbaric" medical care.  *Id*. at PageID.17. The Court construes plaintiff's complaint as limited to claims commencing on that date.  Plaintiff's complaint does not contain "a short and plain statement" of his claims as required by Fed. R. Civ. P. 8(a)(2), nor did he present his claims in coherent numbered paragraphs as contemplated by Fed. R. Civ. P. 10(b). Rather, the complaint is a lengthy and disjointed narrative.  In an attempt to

organize the 27-page chaotic collection of alleged wrongful conduct, the Court has set forth a timeline of plaintiff's claims:

1.      Since plaintiff arrived at MCF on June 4, 2015, he has received "barbaric" medical care and written kites to Warden Burt.  PageID.17.  However, the Warden "has never come to speak with me in person or [i]ntervene on my behalf."  *Id.*

2.      Between June 4, 2015 and December 2015, PA Bien ignored plaintiff's "mountain of medical issues" at chronic care appointments (June, September, and December 2015).  At that time plaintiff begged PA Bien to send him to an urologist.  PageID.20.

3.      In June 2015, PA Bien ignored plaintiff's begging, pleas and tears for adequate pain medication.  PageID.23.

4.      On June 10, 2015, Hamilton cancelled plaintiff's accommodation order for a padded cane handle.  PageID.19

5.      On June 24, 2015, Wilkinson and Hamilton scheduled an appointment with Dr. Howard to discuss plaintiff's details and accommodations.  Dr. Howard later took away plaintiff's basin tub and Epsom salts.  *Id.*

6.      On June 24, 2015, Dr. Howard ignored plaintiff's begging, pleas and tears for adequate pain medication.  PageID.23.

7.      On August 7, 2015, Wilkinson and Hamilton scheduled plaintiff to see Dr. Worel to discuss details and accommodations.  The doctor cancelled plaintiff's hot water bottle, ace wrap, and ice.  *Id.*

8.      On August 7, 2015, Dr. Worel ignored plaintiff's begging, pleas and tears for adequate pain medication.  PageID.23.

9.      In September 2015, PA Bien ignored plaintiff's begging, pleas and tears for adequate pain medication.  PageID.23.

10.     On October 15, 2015, PA Bien cancelled plaintiff's pain medication, because he would not take Pamelar and Mobic.  Plaintiff stated that he had serious side effects from these medications.  Neither PA Bien nor Dr. Decker reinstated paperwork to the MDOC for pain medication since that date.  PageID.22-23.

11.     In December 2015, PA Bien ignored plaintiff's begging, pleas and tears for adequate pain medication.  PageID.23.

12.     On January 19, 2016, Wilkinson, Hamilton and PA Bien took away plaintiff's accommodation for adult diapers. PageID.20

13.     On January 26, 2016, Wilkinson took away plaintiff's shower chair. PageID.21.

14.     On February 18, 2016, Wilkinson and Hamilton retaliated and harassed plaintiff by having officers shake down his cell. PageID.18.

15.     On April 1, 2016, Dr. Decker ignored plaintiff's begging, pleas and tears for adequate pain medication.  PageID.23.

16.     From April 1, 2016 through May 17, 2016 Corizon and the MDOC would not get plaintiff a re-fill of albuterol for his breathing problems because the three months for his prescription had not run out.  PageID.24.[1]

17.     On April 20, 2016, Wilkinson and Hamilton retaliated and harassed plaintiff by having officers shake down his cell. *Id.*

---

[1] The Court notes that the MDOC is not a defendant in this action.

18.    On April 21, 2016, Wilkinson spoke with Dr. Decker, who later that day cancelled plaintiff's accommodation for a raised toilet seat and cotton blankets he used for a hip cushion.  PageID.21.

19.    On April 21, 2016, plaintiff begged Dr. Decker to send him to an urologist. PageID.20.

20.    On April 21, 2016, Dr. Decker ignored plaintiff's begging, pleas and tears for adequate pain medication.  PageID.23.

21.    On May 12, 2016, Dr. Decker cancelled plaintiff's accommodation for a shower chair.  PageID.21.

22.    On May 12, 2016, plaintiff begged Dr. Decker to send him to an urologist.

23.    On May 12, 2016, Dr. Decker ignored plaintiff's begging, pleas and tears for adequate pain medication.  PageID.23.

24.    On June 19, 2016, plaintiff had an orthotics appointment at DWH where he found out that one leg was 3½ inches shorter than the other. PageID.22.  His leg was not shorter prior to his 2013 hip replacement.  *Id.*

25.    Wilkinson and Hamilton violated MDOC policy by sending grievances to MCF grievance coordinator and telling her to reject them, and were part of a conspiracy with Warden Burt to place plaintiff on "grievance modified access status" from March 10, 2016 through June 10, 2016.  PageID.18.

26.    Wilkinson and Hamilton interfered with his medical treatment.  *Id.*

5

Based on this timeline, the Court construes the complaint pursuant to Fed. R. Civ. P. 8(e)[2] to consist of the following claims, which, for purposes of this report, the Court will refer to as "Counts":

**Count I.** Since June 4, 2015, plaintiff has written kites to MCF Warden Burt about his poor medical care at MCF, but the Warden has never spoken to him or intervened on his behalf.

**Count II**. In June 2015, PA Bien denied plaintiff a referral to an urologist and adequate pain medication.

**Count III**. On June 10, 2015, HUM Hamilton cancelled plaintiff's accommodation order for a padded cane handle.

**Count IV**. On June 24, 2015, HUM Wilkinson and NS Hamilton scheduled an appointment with Dr. Howard to discuss plaintiff's details and accommodations, which resulted in Dr. Howard taking away plaintiff's basin tub and Epsom salts.

**Count V**. On June 24, 2015, Dr. Howard ignored plaintiff's plea for adequate pain medication.

**Count VI**. On August 7, 2015, HUM Wilkinson and NS Hamilton scheduled plaintiff to see Dr. Worel to discuss details and accommodations, which resulted in the doctor cancelling plaintiff's hot water bottle, ace wrap, and ice.

**Count VII**. On August 7, 2015, Dr. Worel ignored plaintiff's plea for adequate pain medication.

**Count VIII**. In September 2015, PA Bien ignored plaintiff's pleas to refer him to an urologist and for adequate pain medication.

---

[2] Fed. R. Civ. P. 8(e) provides that, "Pleadings must be construed so as to do justice."

**Count IX**.  On October 15, 2015, PA Bien cancelled plaintiff's pain medication, because he would not take Pamelar and Mobic.

**Count X**.  In December 2015, PA Bien ignored plaintiff's pleas to refer him to an urologist and for adequate pain medication.

**Count XI**.  On January 19, 2016, HUM Wilkinson, NS Hamilton and PA Bien took away plaintiff's accommodation for adult diapers.

**Count XII**.  On January 26, 2016, Wilkinson took away plaintiff's shower chair.

**Count XIII**.  On February 18, 2016, HUM Wilkinson and NS Hamilton retaliated and harassed plaintiff by having officers shake down his cell.

**Count XIV**.  On April 1, 2016, Dr. Decker ignored plaintiff's plea for adequate pain medication.

**Count XV**.  From April 1, 2016 through May 17, 2016 Corizon would not get plaintiff a re-fill of albuterol for his breathing problems.

**Count XVI**.  On April 20, 2016, HUM Wilkinson and NS Hamilton retaliated and harassed plaintiff by having officers shake down his cell.

**Count XVII**.  On April 21, 2016, HUM Wilkinson spoke with Dr. Decker, who later that day cancelled plaintiff's accommodation for a raised toilet seat and cotton blankets plaintiff used for a hip cushion.

**Count XVIII**.  On April 21, 2016, Dr. Decker ignored plaintiff's pleas to send him to an urologist and for adequate pain medication.

**Count XIX**.  On May 12, 2016, Dr. Decker cancelled plaintiff's accommodation for a shower chair.

**Count XX**.  On May 12, 2016, Dr. Decker ignored plaintiff's pleas to send him to an urologist and for adequate pain medication.

**Count XXI**.    HUM Wilkinson and NS Hamilton interfered with plaintiff's grievances by telling the MCF grievance coordinator to reject them and were part of a conspiracy with Warden Burt to place plaintiff on "grievance modified access status" from March 10, 2016 through June 10, 2016.

The "Statement of Claim" in plaintiff's form complaint refers to "Attached Pages" which, among other things, lists the following 13 causes of action:  (1) all defendants entered into a conspiracy to deny plaintiff medical care; (2) all defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment; (3) all defendants violated Title II of the Americans with Disabilities Act ("ADA"); (4) all defendants violated the Rehabilitation Act ("RA"); (5) all defendants violated the "Hippocratic Oath," i.e., "to provide treatment to cure, not harm"; (6) all defendants "are guilty of retaliation and harassment" (First Amendment); (7) all defendants denied plaintiff due process regarding medical issues (Fourteenth Amendment) ["denying me 'Due Process' to resolve my medical issues and a need for a Boat load of medical care that [I] am not receiving currently, or in the past"]; (8) all defendants engaged in cruel and unusual punishment tantamount to torture under the Eighth Amendment; (9) all defendants violated MDOC policies and procedures; (10) all defendants violated MDOC and civil service employee work rules; (11) all defendants violated the MDOC collective bargaining agreement; (12) all defendants engaged in retaliatory transfers prior to his arrival at MCF (First Amendment); and (13) all defendants failed to apply Michigan's no-fault insurance laws to his treatment.  Compl. at PageID.5-8.

As an initial matter, plaintiff's claims of retaliatory transfer pre-date the claims at issue in this complaint, all of which related to plaintiff's medical treatment received at MCF.  Next, plaintiff's Eighth Amendment claims for cruel and unusual punishment are related to his medical care and are construed as part of his Eighth Amendment deliberate indifference claims.  *See Pond v. Haas*, 674 Fed. Appx. 466, 470 (6th Cir. 2016) ("The Eighth Amendment's prohibition on cruel and unusual punishment extends to actions by prison officials that constitute 'deliberate indifference' towards an inmate's 'serious medical needs.'").  In addition, the Court concludes that some of plaintiff's allegations were so vague as to not state a cause of action: a claim that plaintiff discovered on June 19, 2016 that one leg was 3½ inches shorter than the other leg; a general claim that HUM Wilkinson and NS Hamilton interfered with his medical treatment; and, a claim that all defendants violated the MDOC collective bargaining agreement. These three claims fail the plausibility test in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*see* discussion, *infra*).  While the pleading standard announced in Fed. R. Civ. P. 8 does not require detailed factual allegations, "it demands more than an unadorned, the - defendant - unlawfully - harmed - me accusation." *Iqbal*, 556 U.S. at 678.  Finally, as discussed in § V, *infra*, plaintiff's state law claims should be dismissed pursuant to 28 U.S.C. § 1367.   Accordingly, the Court construes plaintiff's complaint as alleging the following causes of action: conspiracy under 42 U.S.C. § 1983; deliberate indifference to serious medical needs in violation of the Eighth Amendment; retaliation and harassment in violation of the First Amendment; lack of due process in violation of the Fourteenth Amendment; violation of the ADA; and, violation of the RA;

## II.    Corizon Defendants' motion to dismiss

### A.    Legal standard

Corizon defendants bring this motion pursuant to Fed. R. Civ. P. 12(b)(6), which

seeks dismissal for failure to state a claim upon which relief can be granted.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

In making this determination, the complaint must be construed in the light most

favorable to the plaintiff, and its well-pleaded facts must be accepted as true.  *Morgan v. Churchs*

*Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  The Court "may consider the Complaint and any

exhibits attached thereto, public records, items appearing in the record of the case and exhibits

attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are

central to the claims contained therein."  *Bassett v. National Collegiate Athletic Association*, 528

F.3d 426, 430 (6th Cir. 2008).  Finally, *pro se* complaints, like the one filed in this case, "are to be

held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be

liberally construed."  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation

marks omitted).

### B.    Statute of limitations

Corizon defendants contend that plaintiff's § 1983 claims which occurred before

February 9, 2013, are barred by the three-year statute of limitations.  "A complaint is subject to

dismissal without any further proof if 'the allegations . . . show that relief is barred by the applicable statute of limitations.'" *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012), quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007).

> Although an affirmative defense is generally not the proper subject of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir.1998) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994)); *see also Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 775 n. 3 (5th Cir.1997) (stating that "certain affirmative defenses that clearly appear on the face of the plaintiff's complaint—most commonly that the statute of limitations has run—may properly be asserted in a Rule 12(b)(6) motion"). The Sixth Circuit adheres to this rule as well.  *See Pierce v. Oakland Cnty.*, 652 F.2d 671, 672 (6th Cir.1981) (holding that an affirmative defense is not waived even if not pled where it appears on the face of the complaint and is asserted by the defendant in a Rule 12(b)(6) motion to dismiss).

*Patton v. Village of Cassopolis*, No. 1:13-cv-124, 2013 WL 3929989 at *1 (W.D. Mich. July 29, 2013).

The statute of limitations for a § 1983 claim in Michigan is three years, based upon Michigan's three-year statute of limitations for injury to a person or property, M.C.L. § 600.5805(10). *Chippewa Trading Company v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004).  The statute of limitations which applies to a prisoner's § 1983 civil rights action is tolled for the period during which the prisoner exhausts his state administrative remedies.  *See Waters v. Evans*, 105 Fed. Appx. 827, 829 (6th Cir. 2004).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) (emphasis added). This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to [the

11

prisoner's] civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).

Here, Corizon defendants' motion to dismiss should be denied because the operative facts needed to determine the statute of limitations defense are not clear from the face of the complaint.  Specifically, the Court does not accept Corizon defendants' conclusion that plaintiff's three year statute of limitations is tolled by no more than 150 days, which is the maximum amount of time the MDOC policy allowed for the completion of the grievance process through Step III (i.e., 120 days plus two 15-day extensions).  *See* Corizon defendants' Brief (ECF No. 39, PageID.1111).  This tolling argument has been rejected "because it is contrary to sound policy: if a grievance did not toll the limitations clock during the entire grievance process, the prison, upon receiving a grievance could, through its own dilatory practices, wait out the limitations period."  *See, e.g., Davis v. Straub*, No. CIV.A. 10-14397, 2011 WL 2433398 at *7 (E.D. Mich. May 10, 2011), R&R adopted, No. 10-14397, 2011 WL 2415357 (E.D. Mich. June 13, 2011) (prisoner's statute of limitations should be tolled from the date the prisoner completed the Step I grievance form until the dated the MDOC approved the Step III grievance response, which in that case was 316 days).  Given the tolling language in *Brown* ("the statute of limitations which applied to [the prisoner's] civil rights action was tolled for the period during which his available state remedies were being exhausted") and the policy considerations recognized in *Davis*, the undersigned concludes that the cause of action should be tolled during the actual time that it took plaintiff to complete the grievance process, *i.e.*, the date plaintiff submitted the Step I grievance form until the date the MDOC addressed the Step III appeal.  The relevant facts to determine tolling are not before the Court.  Accordingly, Corizon defendants' motion to dismiss should be denied with respect to the statute of limitations defense.  Nevertheless, as stated above,

the Court construes plaintiff's complaint as involving only those claims which arose since plaintiff's transfer MCF on June 4, 2015.

## C.    Fourteenth Amendment

The individual Corizon defendants contend that plaintiff's Fourteenth Amendment claim, i.e., defendants are "guilty of denying [plaintiff] 'Due Process' to resolve [plaintiff's] medical issues and a need for a Boat load of medical care that [plaintiff] is not receiving currently, or in the past," fails as a matter of law.  Compl. at PageID.16.  The Court agrees.  Plaintiff conclusory claim does allege what "due process" was involved in his medical treatment and what "due process" he failed to receive.  Plaintiff must allege something more than "an unadorned, the - defendant - unlawfully - harmed - me accusation." *Iqbal*, 556 U.S. at 678.  The gist of plaintiff's claim is that defendants have been deliberately indifferent to his serious medical needs.  The Fourteenth Amendment applies to a pre-trial detainee's claim for deliberate indifference.  Because plaintiff is a convicted felon in the custody of the MDOC, his claim for deliberate indifference is properly brought under the Eighth Amendment:

> The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment.  *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Whether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983.  *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir.1985).

*Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).  Accordingly, plaintiff's Fourteenth Amendment due process claim should be dismissed as to the individual Corizon defendants. [3]

---

[3] The Court notes that plaintiff raised a separate due process claim against HUM Wilkinson and NS Hamilton, i.e., that they denied him due process by interfering with the grievance process.

### D.    First Amendment

The individual Corizon defendants construe plaintiff's complaint as including a claim that they are "guilty of retaliation and harassment" and seek to dismiss this claim.  Compl. at PageID.6.  Plaintiff has not alleged any of the elements of a First Amendment retaliation claim against the individual Corizon defendants.  Plaintiff only articulates retaliation and harassment in **Counts XIII** and **XVI**, both counts being directed at MDOC defendants (HUM Wilkinson and NS Hamilton).  Accordingly, the individual Corizon defendants' motion to dismiss plaintiff's First Amendment "retaliation and harassment" claim should be granted.[4]

### E.    Conspiracy

Plaintiff appears to allege that all of his claims arise from defendants' conspiracy to deny him medical treatment.  Corizon defendants contend that plaintiff has not stated a viable conspiracy claim.  For his part, while plaintiff contends that "the word 'conspiracy' most certainly applies to the persistent failure to address my medical conditions."  Plaintiff's Response (ECF No. 40, PageID.1140).  The standard for proving a civil conspiracy under § 1983 was set forth in *Hooks v. Hooks*, 771 F.2d 935 (6th Cir.1985):

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Id*. at 943-44.  "The elements of a civil conspiracy under Section 1983 are 'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed.' " *Womack v. Conley*, 595 Fed. App.

---

[4] As discussed, plaintiff's claims of previous retaliatory transfers are not part of this action.

489, 494 (6th Cir. 2014), quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir.2007). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987). "Accordingly, pleading requirements governing civil conspiracies are relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). Here, plaintiff has not pled the existence of an alleged conspiracy. His claim is based on the vague and conclusory allegations that defendants "have acted out a conspiracy to deny [plaintiff] much needed diagnostic testing, medical treatment, surgery, [and] prescription medication that is adequate to manage/treat [plaintiff's] massive pain, underlying orthopedic issues, and other medical issues." Compl. at PageID.5. Plaintiff's allegations are insufficient to allege a claim for conspiracy against defendants. To plead a cause of action, a plaintiff must allege more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. Accordingly, this claim should be dismissed as to all defendants.[5]

### F.    ADA and RA claims

Plaintiff alleged that defendants are "guilty of deliberately, flagrantly, diligently, purposely violating Title II of the Americans with Disabilities Act, and the Rehabilitation Act". Compl. at PageID.5. "The ADA and Rehabilitation Act afford disabled persons legal rights

---

[5] Although the MDOC defendants did not seek dismissal on this ground, plaintiff's claims against them should be dismissed for failure to state a claim on which relief may be granted. "[I]t is well settled that even if a party does not make a formal motion to dismiss, the Court may on its own initiative dismiss the complaint for failure to state a claim upon which relief can be granted . . . where the inadequacy of the complaint is apparent as a matter of law." *Washington Petroleum & Supply Co. v. Girard Bank*, 629 F. Supp. 1224, 1230-31 (M.D. Pa. 1983) (internal quotation marks omitted). *See also Coulter v. Unknown Probation Officer*, 562 Fed. Appx. 87, 89 n. 2 (3d Cir. 2014) ("courts have upheld a district court's authority to *sua sponte* dismiss a complaint for failure to state a claim against a non-moving defendant where it was clear the plaintiff failed to state a claim for relief."); *Varner v. Smith*, No. 13-15070, 2015 WL 1530441 at *12 (E.D. Mich. March 31, 2015) ("it is well established that '[a] court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related.' *Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir.1993).").

regarding access to programs and activities enjoyed by all, but do not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities." *Carrion v. Wilkinson*, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio 2004).  Accordingly, the Court construes plaintiff's complaint to allege violations of the ADA and the RA with respect to those claims involving the cancellation of medical accommodations which allowed plaintiff to access programs and activities available to other prisoners: **Count III** (padded cane handle); **Count IV** (basin tub and Epsom salts); **Count VI** (hot water bottle, ace wrap, and ice); **Count XI** (adult diapers); **Count XII** (shower chair); and, **Count XVII** (raised toilet seat and cotton blankets).

To state a claim under Title II of the ADA, Plaintiff must establish: (1) he is a qualified person with a disability; (2) defendants are subject to the ADA; and (3) he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).  "Under the Rehabilitation Act, '[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .'  29 U.S.C. § 794(a)."  *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).  The Sixth Circuit applies the same substantive standard to both ADA and RA claims.  *Id*.

The ADA prohibits discrimination against disabled individuals by a "public entity," which is defined as "any State or local government or any department, agency, special purpose district, or instrumentality of a State or States or local government." 42 U.S.C. §§ 12132 and 12131(1)(A-B).  A private prison health care provider is not deemed a "public entity" subject to the ADA.  *See Cox v. Jackson*, 579 F. Supp. 2d 831, 852-853 (E.D. Mich. 2008) ("A private

16

contractor does not become a "public entity" under Title II merely be contracting with a governmental entity to provide governmental services.").  In addition, the ADA also does not provide relief for claims against individual defendants.  *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("Title II of the ADA does not, however, provide for suit against a public official acting in his individual capacity."); *Williams v. McLemore*, 247 Fed. Appx. 1, 8 (6th Cir. 2007). ("We have held repeatedly that the ADA does not permit public employees or supervisors to be sued in their individual capacities.").  Accordingly, plaintiff's ADA and RA claims against individual Corizon defendants PA Barbara Bien, Dr. Suzanne Howard, Dr. Jon Decker, and Dr. Richard Worel alleged in **Counts IV**, **VI**, **XI**, and **XVII** should be dismissed.  For this same reason, plaintiff's ADA and RA claims against the individual MDOC defendants alleged in **Counts III**, **IV**, **VI**, **XI**, **XII** and **XVII** should be dismissed *sua sponte*.

## G.    Corizon

While plaintiff seeks to hold Corizon vicariously liable for the actions of its employees, those claims fail.  Private corporations performing state functions cannot be held liable under § 1983 on a theory of vicarious liability.  *See Street v. Corrections Corporation of America*, 102 F.3d 810, 817-18 (6th Cir. 1996), citing *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Under the rule set forth in *Monell*, while a plaintiff may seek damages against a government entity (in that case a municipal corporation), those damages cannot be premised upon vicarious or *respondeat superior* liability.  *Monell*, 436 U.S. at 691-93.  Rather, a plaintiff must establish that a municipal custom, policy, or practice resulted in the deprivation of his constitutional rights.  *Id*. at 690-91. The only claim directed against Corizon itself is that from April 1, 2016 through May 17, 2016 the corporation would not get plaintiff a re-fill of albuterol

for his breathing problems (**Count XV**). [6]  Corizon points out that plaintiff does not identify an alleged unconstitutional policy, practice, or procedure. Accordingly, defendant Corizon's motion to dismiss should be granted with respect to all of the § 1983 claims, including those alleged in **Count XV**.  Because this claim (related to the alleged failure to re-fill albuterol) is the only claim remaining against Corizon, it should be terminated from this action.

### IV.    MDOC defendants' motion for summary judgment

Defendants Burt, Wilkinson, and Hamilton move for summary judgment for lack of exhaustion.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

---

[6] Plaintiff's claim that Corizon failed to provide albuterol is not actionable under the ADA and the RA because it challenges the medical treatment of an underlying disability.  *See Carrion*, 309 F. Supp. 2d at 1016.

*Copeland*, 57 F.3d  at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Failure to Exhaust

### 1.    Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007).  A prisoner must first attempt to resolve a

problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ P and R.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ BB.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ FF.

### 3.    Discussion

Plaintiff's claims against the MDOC defendants are alleged in **Counts I**, **III**, **IV**, **VI**, **XI**, **XII**, **XIII**, **XVI**, and **XVII**.

### a.    Two properly grieved claims

The MDOC defendants admit that plaintiff properly grieved his claims that NS Hamilton cancelled plaintiff's accommodation for a padded cane handle on June 10, 2015 (**Count III**) and that HUM Wilkinson took plaintiff's shower chair on January 26, 2016 (**Count XII**).  *See* MDOC defendants' Brief (ECF No. 47, PageID.1189).

20

###### b.    No Step I grievance filed

Defendants point out that plaintiff filed no Step I grievances with respect to the following claims: that on January 19, 2016, HUM Wilkinson, NS Hamilton and PA Bien took away plaintiff's accommodation for adult diapers (**Count XI**); that on April 21, 2016, HUM Wilkinson spoke with Dr. Decker, who later that day cancelled plaintiff's accommodation for a raised toilet seat and cotton blankets (**Count XVII**); and, that HUM Wilkinson and NS Hamilton interfered with plaintiff's grievance filings and conspired with Warden Burt to place him on grievance modified access status (**Count XXI**).

Plaintiff did not provide evidence to support proper exhaustion of **Counts XI** or **XXI**.  With respect to **Count XVII** (cancellation of extra cotton blanket), plaintiff submitted a Step I grievance which discussed HUM Wilkinson and NS Hamilton going into his cell before a doctor's appointment, after which Dr. Decker cancelled his accommodation for an extra cotton blanket.  *See* Grievance 535 (ECF No. 56-2, PageID.1254).   This grievance included a memorandum dated April 28, 2016, which advised plaintiff that he was being sent a second Step I Grievance to file limited to one issue, i.e., the cancellation of the medical detail for a blanket. *See* Memorandum (ECF No. 56-2, PageID.1256).  The memorandum explained that plaintiff was provided "one step I grievance for your medical detail issue ONLY" but that he "returned the grievance with multiple issues and extraneous information."  *Id.*

Plaintiff produced the second copy of Grievance No. MCF-1605-535-12I ("535") which was directed at Dr. Decker for cancelling the accommodation for an extra cotton blanket on April 21, 2016.  *See* Grievance 535 (ECF No. 56-2, PageID.1252-1253).  It appears that plaintiff exhausted this grievance against Dr. Decker through Step III.  *Id.* at PageID.1249-1251.  Based on this record, the grievance regarding HUM Wilkinson and NS Hamilton was rejected.  Plaintiff

presented no evidence that he properly exhausted a separate grievance directed at Wilkinson and Hamilton for alleged misconduct committed on April 21, 2016.  Accordingly, HUM Wilkinson and NS Hamilton's motion should be granted with respect to **Counts XI**, **XVII**, and **XXI**.

       c.    **Rejected grievances**

Defendants seek summary judgment on all of plaintiff's remaining claims because various grievances were rejected for either raising multiple claims or being duplicative.  However, defendants do not identify the claims with any specificity.  For the reasons discussed below, defendants have not met their burden with respect to exhaustion of plaintiff's remaining claims, and their motion for summary judgment should be denied.

Defendants Wilkinson and Hamilton refer to Grievance MCF 1601011928C (ECF No. 47-1, PageID.1208) which was rejected under PD 03.02.130 for raising multiple unrelated issues in one grievance.  MDOC defendants' Brief (ECF No. 47, PageID.1191).  Defendants do not explain the specific claims in the grievance, only that it contains "allegations similar to that raised in Plaintiff's Complaint (Compl. R. 1, ¶ 32, PageID.17-18)."  MDOC defendants' Brief (ECF No. 47, PageID.1191). Defendants do not explain which claims listed on PageID.17-18 are addressed or not addressed in this grievance, which includes a date of incident from June 4, 2015 through January 26, 2016, and names defendants Wilkinson, Hamilton, Bien, Worel.  The rejection of this grievance does not establish lack of exhaustion with respect to any particular claim.  Defendants make similar vague arguments with respect to two other grievances rejected for including multiple claims, Grievance MCF 1602018028C against Wilkinson and Hamilton with allegations similar to those raised in plaintiff's complaint (Compl. R. 1, ¶ 32, PageID.17-18), and Grievance MCF 16020241C against Wilkinson and Hamilton with allegations similar to those raised in plaintiff's complaint (Compl. R. 1, ¶ 33, PageID.18).  *Id*. at PageID.1191-1192.

Defendants also point out that a number of plaintiff's grievances were rejected as being duplicative.[7]  As with the grievances rejected for raising multiple issues, defendants do not explain which specific claims are addressed or not addressed in these grievances. For example, defendants refer to "Grievance MCF 150662528A, MCF 160220628C, MCF 160325928A (Exhibit 1) against Defendant Warden Burt with allegations similar to that raised in Plaintiff's Complaint (Compl. R. 1, ¶ 31, PageID.17) were each rejected under PD 03.02.130 (Exhibit 2) for raising issues that were duplicative of those raised in another grievance filed by the grievant." Defendants also refer to Grievance MCF 1602022628A against Wilkinson and Hamilton "with similar allegations (Compl. R. 1, ¶ 33, PageID.18)" and "Grievance MCF 1602018427Z against Wilkinson and Hamilton "with allegations similar to that raised in Plaintiff's Complaint (Compl. R. 1, ¶ 34, PageID.18)."  MDOC defendants' Brief at PageID.1191-1192.

### d.    Summary

The MDOC defendants acknowledge that the claims raised in **Counts III** and **XII** were properly exhausted.  While defendants have demonstrated that the claims raised in **Counts XI**, **XVII**, and **XXI** were not properly exhausted, they have not met their burden to demonstrate exhaustion with respect to the claims raised in **Counts I**, **IV**, **XIII**, and **XVI**.   Accordingly, defendants' motion for summary judgment for lack of exhaustion should be granted with respect to **Counts XI**, **XVII**, and **XXI**, and denied with respect to **Counts I**, **III**, **IV**, **XII**, and **XVI**.

### V.    State claims

Plaintiff has alleged four claims which present novel application of state law in the context of prisoner civil rights litigation: (1) all defendants violated the "Hippocratic Oath," i.e.,

---

[7] The Court notes that the MDOC's rejection of plaintiff's grievances as duplicative does not necessarily mean that the claim is unexhausted.  Rather, it indicates to that Court that plaintiff raised the issue in a previous grievance, which may or may not be exhausted.

"to provide treatment to cure, not harm" (a claim arguably sounding in state tort law);[8] (2) all

defendants violated various MDOC policies and procedures; (3) all defendants violated MDOC

and civil service employee work rules; and, (4) all defendants failed to apply Michigan's no-fault

insurance laws to his treatment.[9]  In *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578 (W.D. Mich.

2001), the court explained that it is sometimes preferable to refrain from exercising supplemental

jurisdiction to determine a novel issue of state substantive law:

> The statutory basis for this court's supplemental jurisdiction over state-law claims
> is established by 28 U.S.C. § 1367. Section 1367(a) states that, "Except as provided
> in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in
> any civil action of which the district courts have original jurisdiction, the district
> courts shall have supplemental jurisdiction over all other claims that are so related
> to claims in the action within such original jurisdiction that they form part of the
> same case or controversy under Article III of the United States Constitution. Such
> supplemental jurisdiction shall include claims that involve the joinder or
> intervention of additional parties." In turn, subsection (c)(1) provides that a district
> court "may decline to exercise supplemental jurisdiction over a claim under
> subsection (a) if - (l) the claim raises a novel or complex issue of State law."
> "[D]istrict courts have broad discretion in deciding whether to exercise
> supplemental jurisdiction." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196
> F.3d 617, 620 (6th Cir. 1999). The Sixth Circuit reviews district court decisions
> whether to exercise supplemental jurisdiction under an abuse of discretion standard.
> *See Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279 (6th Cir. 2000);
> *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998). The
> district court's discretion is informed by factors of judicial economy, convenience,
> fairness and comity. 196 F.3d at 620. When facing novel or complex state law,
> district courts are to be cognizant that there may be "nuances" of state law better
> left for resolution in the first instance by the state courts. *See Cooper v. Parrish*,
> 203 F.3d 937, 953 (6th Cir. 2000); *see also Drew v. University of Tennessee
> Regional Medical Center Hosp.*, No. 99-5070, 2000 WL 572064, at *5 (6th Cir.
> May 1, 2000) (finding that it was "entirely appropriate for the district court to
> decline to exercise supplemental jurisdiction" over a claim raising a novel question
> of state law). The "obscurity or paucity of pertinent state judicial precedent [ ]

---

[8] In this regard, the Court notes that in *Moore v. St. John's Hospital*, No. 15-4177-SEM-TSH, 2016 WL 1735769, at *3 (C.D. Ill. March 23, 2016) the Court concluded that "violating the Hippocratic oath does not state a claim upon which relief can be granted."

[9] The Court notes that state law claims arising from an alleged violation of the MDOC collective bargaining agreement would likely be pre-empted under 29 U.S.C. § 185 (section 301 of the Labor–Management Relations Act).  *See generally, United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368 (1990) ("State law is thus 'pre-empted' by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements.").

argue[s] in favor of deferring in favor of the state courts." *Scott v. Long Island Sav. Bank, FSB*, 937 F.2d 738, 742 (2d Cir. 1991).

*Rockey*, 199 F.R.D. at 596.

Here, plaintiff has alleged four claims based upon novel applications of Michigan state law.  "Comity cautions that this court should not create new state-law liability in this case. These issues should be addressed in the first instance by the Michigan state courts."  *Richard v. Oak Tree Group, Inc.*, 614 F. Supp. 2d 814, 825 (W.D. Mich. 2008).  Accordingly, these state law claims should be dismissed without prejudice pursuant to 28 U.S.C. § 1367.  *Id.*

## V.    Recommendation

For the reasons set forth above,

I respectfully recommend that plaintiff's complaint be construed in the manner as set forth in this report to include only those claims identified as **Counts I** though **XXI**, all of which arose after his transfer to MCF on **June 4, 2015**;

I further recommend that the Court decline to exercise supplemental jurisdiction and **DISMISS** the following state law claims without prejudice pursuant to 28 U.S.C. § 1367:

a.      Defendants violated the "Hippocratic Oath;"

b.      Defendants violated MDOC policies and procedures;

c.      Defendants violated MDOC and civil service employee work rules; and,

d.      Defendants failed to apply Michigan's no-fault insurance laws to his treatment.

I further recommend that the motion to dismiss filed by defendants Corizon, Inc., PA Barbara Bien, Dr. Suzanne Howard, Dr. Jon Decker, and Dr. Richard Worel (ECF No. 39) be adjudicated as follows:

a.    That defendants' motion be **DENIED** with respect to the statute of limitations defense.

b.    That defendants' motion be **GRANTED** with respect to plaintiff's claims alleging conspiracy and violations of the First Amendment, Fourteenth Amendment, Americans with Disabilities Act and Rehabilitation Act; and,

c.    That defendants' motion be **GRANTED** to defendant Corizon, Inc. with respect to **Count XV** and all other claims alleged against it, and that Corizon, Inc. be **DISMISSED** from this action.

I further recommend that the Court *sua sponte* **DISMISS** plaintiff's claims brought against defendant Burt for conspiracy and violations of the Fourteenth Amendment, Americans with Disabilities Act, and Rehabilitation Act.

I further recommend that the Court *sua sponte* **DISMISS** plaintiff's claims brought against defendant Wilkinson, and Hamilton for conspiracy and violations of the Americans with Disabilities Act, and Rehabilitation Act.

I further recommend that the motion for summary judgment filed by defendants Burt, Wilkinson, and Hamilton (ECF No. 46) be **GRANTED** as to **Counts XI**, **XVII** and **XXI** and **DENIED** in all other respects.

I further recommend that this case **proceed** on plaintiff's claims that the individual defendants violated his Eighth Amendment rights by being deliberately indifferent to his serious

medical needs as alleged in **Counts I-X**, **XII**, **XIV**, and **XVIII-XX**, and that defendants Wilkinson

and Hamilton retaliated against plaintiff in violation of the First Amendment as alleged in Counts

**XIII** and **XVI**.


Dated:  March 20, 2018                                /s/ Ray Kent
                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk
of the Court within fourteen (14) days after service of the report.  All objections and responses to
objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections
within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474
U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).